Mr. Peterson, whenever you're ready. Thank you, Your Honor, and may it please the Court, my name is John Peterson, representing the Plaintiff Appellant Lockhart Textiles. The United States Court of International Trade committed three reversible legal errors in holding that the yarns comprising our client's imported trousers were not metallized yarns for tariff purposes. I'd like to turn to each of those errors individually. First, the Court disregarded the language of the statute. In order for something to be classified as a metallized yarn under the Harmonized Tariff Schedule,  it has to be a textile yarn of heading 5404 or 5405, which our product is. It has to be a synthetic polyester monofilament of 67 decitex or more, which we are. It can't have a cross-sectional dimension exceeding one millimeter, and it must be combined with metal in a specific form, form of a thread, strip, or powder. Now, our product ticks all those boxes. Our yarn ticks all those boxes, and the lower court admitted as much. This should have ended the inquiry because the starting point for construction of a statute is the language of the statute itself. And under the statute, the yarns comprising our trousers met the very exacting definition of metallized yarn. Counsel, this is Judge Stoll. As I read the opinion below, I understood it to be focusing on that language, yarn, then combined with metal, and that this language in the heading, because it says yarn, then it's combined with metal, means that it's yarn that's already been made, and then it's combined with metal, whereas in your product, as I understand it, there's materials to make the yarn and then metal, and then together they're combined and they make yarn, as opposed to having a separately constructed piece of yarn, which is then combined with metal. Am I correct in understanding that that was the ruling? And if so, why is that wrong? Well, Your Honor, to the extent that's what the lower court held, it was wrong because there's a very well-established doctrine in tariff law called the preexisting material doctrine. And it says when a tariff provision wants to imply that there must be a preexisting material, the language of the tariff is very clear and very specific. And merely saying that something is composed of a substance or it is metallized or has an adjective attached to it is not sufficient. Now, we addressed that in our reply brief when we talked about the Jock Isler case, where the question was, was a particular product a hood of felt fur? And in that particular process, the felt was created in the form of a hood. And the argument was, well, this is not a hood of fur felt because there was no preexisting felt. But the court said, no, no, the language of the tariff item in the Jock Isler case did not implicate the preexisting material doctrine. And in fact, the language here does not implicate the preexisting material doctrine because the language of the statute is totally silent, and it makes no reference at all to the method by which the metal powder, in this case, and the yarn are combined. So to the extent the lower court invoked the preexisting material doctrine, it did so incorrectly. Well, this is Judge Prost. My only comment there is that, as you noted, this argument was made in gray. So I look forward to the government's response when it gets up in a few minutes. Right. And if one looks at the red brief, Your Honor, you'll notice that the government is inconsistent in its position because the government doesn't argue that you always have to have a preexisting textile yarn. The government says, well, you could have a combination of metal with preexisting plastic film to make lurex. So we just don't think the preexisting material doctrine applies here. It's been a while since the court applied it, but if you go back to the Jock Isler case, you'll see we fit pretty comfortably into that precedent. Now, if I may, the second legal error, once the court determined that this product satisfied the requirements of the tariff provision for metallized yarn, the next step would have been to perform a check and to apply the essential resemblance test. It's a long-established rule of interpretation that an AO nominee product covers all forms of the named article, including newly developed forms. Now, the essential resemblance test, it's a judicial check on that. It prevents me from, say, creating a new type of pocket comb and calling it metallized yarn. The court will say, well, before I classify it as metallized yarn, I want to see if it has an essential resemblance to the other things known as metallized yarn. And the lower court here did something very curious. It said that the essential resemblance test died with the former harmonized tariff schedule of the United States. Now, he didn't say why. Certainly, there are cases where a new tariff statute may contain specific new rules that render obsolete old judicial rules of construction. For those of us old enough to have practiced with it, in the old tariff schedule, there was a whole judicially constructed doctrine of entireties. It went away with the harmonized tariff schedule because the HTS had specific rules on how to deal with goods and composite goods and sets. But there's nothing in the harmonized tariff schedule that would make the essential resemblance test go away. And, in fact, this court has recognized that an AO nominee provision covers all forms of the article. It's cited the Nootka Packing Decision, which is its seminal decision on this point. And I'd just like to point out the case of Decker's Corp versus the U.S. This court decided in 2014. And the court said the AO nominee provisions in the HTS cover articles which, quote, perform the same essential function as the named exemplar, or which, quote, possess the essential characteristics of the specifically named or enumerated article. So I would suggest that the lower court erred in suggesting the essential resemblance test was no longer applicable. Counsel, I understand your point, but I just want to ask you one question for clarification. I understand you to be saying that the essential resemblance test is still well and alive, but it wouldn't come into play until after I determine whether your product satisfies the heading of metallized yarn being textile yarn combined with metal, right? That's correct, Your Honor. I don't think there's any dispute in this case that our products do meet that definition. Well, I thought that actually that was disputed, and that was part of the holding below. The court below said that your product was not made of metallized yarn, right? Well, no, the metal is there. I mean, it's not disputed. I mean, the lower case was decided on a summary judgment motion. So both parties, I think, agree that there's metal. I mean metallized yarn for tariff purposes. Right. I think you're being very precise. You might refer to it as metallized yarn, but I'm saying for tariff purposes under, you know, the 5605 provision. If the lower court disputed it, it was likely because it was either applying a preexisting material doctrine or probably because of what we say is the third legal error, which is the court improperly read the explanatory notes to create an exception to the coverage of the tariff language. And that's what the court did. Now, the court focused on an explanatory note that said that the 5605 provision for metal yarn did not cover, quote, yarn composed of a mixture of textile material and metal fibers conferring an antistatic effect. That's not a derogation or exception from the statutory language because that's talking about yarns with metal fibers. And something with metal fibers couldn't be a metallized yarn because the language of the tariff limits us to thread, strip, and powder. So that was just by way of explanation. Now, this court had suggested back in the Midwest of Cannon Falls case in 1997 that you don't read the particulars of the explanatory notes as a limitation on the language of the statute. But more to the point, about a month after the lower court issued its decision in this case, this court came out in the case of Apple Inc. versus the United States and said it in plain words, quote, explanatory notes cannot create an exception to an HTS heading. And that's all there is. Now, one of the real problems here is if a trial court can take a look at an explanatory note, and mind you, that explanatory note talked about yarns and metal fibers for antistatic purposes. If a court can read out from that and expand that and say, well, when it doesn't cover a combination of yarn with metal powder for ultraviolet protection purposes, then the entire scheme of harmonized tariff schedule construction becomes unmoored. You know, the law means whatever a judge feels at a particular time. And all we're asking here is for the court to follow the rule that we interpret something according to the language of the tariff, follow the longstanding rule that the AO Nomine provision covers all forms, including subsequently developed forms, apply the essential resemblance test, which the lower court failed to do. I think when you do that, Your Honors, you will reverse the lower court and classify our products as being trousers of other fabrics because they are made of metallized yarns. And I'll reserve any further time for rebuttal if I may. Thank you. Ms. Powell? Good morning. My name is Marcella Powell. I represent Apelli, the United States. May it please the court. The trousers at issue are properly classifiable in subheading 6114.63.21 because they are not made with metallized yarn. So the central issue on this appeal is the interpretation of the scope and meaning of heading 5605. And appellant pointed out and argued that the trial court made three fundamental errors. We disagree. The trial court here used all of the tools of statutory interpretation. As established, as well established, that GRI 1 is paramount, which means the first thing you do is to look at the language of the heading. And that's what the court did. It looked at the language of the heading and it's reflected in its decision. And the heading here says metallized yarn, whether or not gimped, being textile yarn or strip or the like of heading 54 or 5405. Then it's combined with metal in the form of thread, strip, or powder, or cover with metal. The trial court then used additional tools to determine the meaning and scope of that heading. I see where the court specifically on page 88 identifies your argument for how to interpret heading 5605 specifically as what you've just said. And I appreciate that argument. Where is it in the court's opinion that it specifically says that it agrees with the defendant on that or says specifically that there's two distinct requirements of heading 5605, namely a product of yarn that is combined with metal? Where would I find that? I don't think the court actually stated that there were two distinct products. But what the court did find was that it did not cover all combinations of textile yarn and metal. And what it did was it looked at the industry definitions to confirm its understanding of the plain language of the statute as well as looked at the explanatory notes. And where does it talk about the plain language of the heading? Is it really just at page 8? Is there someplace else I should be looking at? No, it's not on page 8. The trial court looked at the language of the heading but did not do an in-depth analysis of the heading. So no, the trial court's decision doesn't expressly state that it followed the plain language of the heading, but that's exactly what it did. It confirmed that the heading does not cover all textile and yarn combinations. It confirmed that that understanding or interpretation is consistent with the industry definitions and consistent with the explanatory notes. So while the trial court's decision isn't, as some say, a model of clarity, that's exactly what the trial court did. It used the tools of statutory interpretation. Ms. Powell, this is Judge Gross. As we mentioned talking to your friend, he raised the pre-existing material doctrine in gray for the first time. So would you care to respond to the argument he made in gray? Sure. The pre-existing material doctrine, similarly to the essential resemblance doctrine, those were concepts under the 2-SYS. In the gray brief, there are no decisions applying those concepts to the HTS-US because we actually have GRIs, which weren't in existence for the 2-SYS. And the GRIs state, you look at the language of the heading. There's no need to look at an essential resemblance. There's no need to look at pre-existing material. The GRIs take care of that. You go through GRI 1, and if you can't classify a product under GRI 1, then you go to GRI 2, you go to GRI 3. There's no need to go to these sort of older 2-SYS concepts to classify merchandise. One of the other... I'm sorry. This is Jeff Clevenger. I don't think you're really responding to the question that Judge Prost was asking you, which is whether you're arguing that raising the issue in the gray brief was too late. Oh, I'm sorry. Yes, it was too late. Yes, it was too late. And the court, you know, reading the court's decision, we disagree that the court even applied that doctrine. You disagree that the court applied the doctrine? Yes. The court didn't apply the pre-existing material doctrine that's in the 2-SYS. The court actually looked at the plain language of the heading. It actually, just like with the essential resemblance doctrine, if it's something from the 2-SYS, it's not necessarily carried over into the HTS-US. This is Judge Clevenger. Can you read me the language of the heading and then explain to me why the heading does not cover all? What are the specific words you're talking about? The specific words, as it pertains to this case, are textile being, textile yarn combined, meaning it has to be a yarn, textile yarn of heading 5404 or 5405, combined with metal in the form of thread, strip, or powder, or covered with metal. So your argument is that the words of the statute, in essence, create a pre-existing material? Yes, it says it must be a pre-existing material. Also, we can't also ignore that the first two words in the statute are metallized yarn, right? So we're metallizing yarn. So it's consistent with the words being textile yarn or strip or the like of heading 5404 or 5405, combining that with metal. And so that's how the plain language should be interpreted. And again, it's consistent with the definitions, consistent with the explanatory notes. It also is consistent with the notion that we don't read statutes in a vacuum. We don't read statutes in a way that reads out other provisions, right? So in our briefing... Excuse me. This is Judge Clemens. On your reading of the heading itself, you don't need the explanatory notes, and you don't need existing practice, right? No, no, we don't. But those are additional, that's additional support. Yes, yes, right. It's to confirm. It's to show that, okay, that reading, that interpretation is correct. So, no, you don't need the explanatory notes or the industry definitions, but they are consistent with that reading and, like I said, consistent with the notion that you read all the HTSUS provisions together so that you don't make this provision so broad that it reads out other provisions. Any other... Sure. I wanted to touch on the fact that counsel had mentioned the Apple case. The Apple case, we agree that the court did hold that, and it held the same thing in Midwest, that you can't use an explanatory note to create an exception or a limitation in a heading, but we submit that that didn't happen here. The court did not create an exception or a limitation. What the court did with the explanatory notes is both parties brought up the explanatory notes, so the court had sort of an obligation to address them, and that's what the court did. And with respect to appellant's assertion that the trial court read in a limitation regarding the anti-static yarn and fibers mentioned in the explanatory notes, that's not what the court did. The court looked at those three or four, I would say, exclusions, but not necessarily exclusions, and looked at it in the terms and said, okay, there are other provisions in the HTS-US that cover metal and textile yarn combinations. That's the purpose of that note, is to inform the judge, inform the court on the scope of the heading. So it didn't really read those limitations into the heading, it just used those limitations to inform the scope of the heading so that the scope of the heading wouldn't be interpreted so wide that it would subsume other provisions. And I think the last thing I wanted to mention was the Lorex reference. There was the assertion that Customs has sort of been inconsistent in that it classified Lorex as a metallized yarn under 5605. That is correct. Lorex is a metallized yarn under 5605. It is made with plastic sandwiching aluminum between two sheets of plastic, and the plastic falls under the phrase strip or the like of heading 5404 and 5405. And it's also consistent in that it's a multi-component way of metallized yarn, so there's no inconsistency on Customs' behalf in classifying Lorex as metallized yarn. And last, the court did note that there were some disagreements in terms of some of the facts below. We don't think it should preclude, it didn't preclude summary judgment. It shouldn't preclude this court from affirming the trial court's decision, but I just wanted to touch on that. And in closing, we submit that the trial court's decision regarding the classification of the trials is correct. It used the tools of statutory interpretation, and the decision should be affirmed. Thank you. Thank you. Mr. Peterson, I think you have a few minutes left. Thank you, Your Honor. A couple of brief points. First, my learned colleague indicated that Judge Borden and his decision had relied on industry definitions. While she was speaking, I reread the decision, and I didn't see any reference to industry definitions there, so I don't think that he relied on those. Secondly, with regard to the preexisting material, Doctrine, we raised it in the gray brief because it was responsive to the argument contained at pages 13 to 19 of the government's brief. And it wasn't too late. I think what the court should bear in mind is, in a tariff case of this kind, where there's no dispute of fact, it's a pure question of law, and this court decides the issue de novo without regard to the CIT's decision. So, consequently, if the government, in its brief, was urging this court to apply the preexisting material doctrine, it was certainly proper, in fact, necessary for us to address that in the reply brief. Now, with regard to the preexisting material doctrine, counsel makes a very new argument here and says, well, that too died with the Harmonized Tariff Schedule. She says that's because we have general rules of interpretation in the HTS, and that may well be, but she never indicated what rule of interpretation in the HTS might have addressed the question of preexisting material. Under this court's precedent, you always look to the language of the tariff. So if something said, you know, flitches made from pine trees or something, that would have a preexisting material connotation. She also said that the lower court- Counsel, this is Judge Stahl, just really quickly. What about the language where it says, metalized yarn being textile yarn combined with metal? Why isn't the idea of yarn, that's one thing, combined with metal, that's the second thing. Why isn't that language alone clear enough? I believe that's what the government's relying on. Well, two reasons, Your Honor. First of all, the government itself doesn't take the position that you have to combine the metal with the preexisting textile yarn. She just gave the example of lurex. No, I think you're wrong on that. I actually think she does think that it's two separate things, and that's her main point. But anyway, and I think her point was that lurex is a material that is then combined with metal. But anyway, go ahead. Okay. Well, the other point is that at no point does Heading 5605 say that the yarn has to preexist the combination with metal. You have to have a textile yarn. The existence of lurex tells us that's not the way to interpret the law. But also, there's nothing that says where or how or when the metal can be combined. So what we have here is a new technology where we create the yarn and the metallized yarn in the same operation. Precisely what happened in the Schock-Isler case, they created the felt and they created the hood made from the felt in the same operation. They came into existence simultaneously. There's nothing in the language of Heading 5605 that precludes that result in this case. And if that is all, Your Honor, I conclude it. Thank you. Thank you. We thank both sides and the case is submitted.